IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD ALMY,<br><br>                 Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN,<br><br>                 Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER<br><br>Case No. 2:13-cv-50 BCW<br><br>Magistrate Judge Brooke Wells |

Plaintiff Richard Almy appeals from the denial of his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). After careful consideration of the record and the briefs, the Court has determined that oral argument is unnecessary and decides this case based upon the record before it.[1] For the reasons set forth below, the Court affirms the decision of the Administrative Law Judge (ALJ).[2]

## BACKGROUND

Mr. Almy applied for SSI and DIB alleging disability as of July 6, 2009, due to "bad discs in back," bipolar disorder, and depression.[3] In his pain questionnaire, Mr. Almy stated that "[t]he only reason I need SSD is because I need to have back surgery done on the two rupture disc[s]."[4] His application was denied initially[5] and upon reconsideration.[6] Mr. Almy sought a

---

[1] *See* Scheduling Order, docket no. 17 (noting that [o]ral argument will not be heard unless requested at the time of [the] filing first briefs by either party and upon good cause shown").
[2] Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart,* 331 F.3d 758, 759 (10th Cir. 2003).
[3] Tr. 140. Tr refers to the record before the Court.
[4] Tr. 149.
[5] Tr. 53-56.
[6] Tr. 60-62.

hearing before an ALJ. In rendering his decision, the ALJ followed the standard sequential five-step evaluation process for determining whether an individual is disabled.[7]

At step two the ALJ found Mr. Almy had one severe impairment, degenerative changes in the lumbar spine. The ALJ concluded the record did not support a finding of a severe mental impairment despite some evidence of mental impairments in the record because Plaintiff's mental impairments did not "cause more than minimal limitation in [Mr. Almy's] ability to perform basic mental work activities."[8] In rejecting Plaintiff's alleged mental impairments the ALJ also noted Mr. Almy's statement to a social worker made in 2010. Mr. Almy stated that he "is seeking mental health treatment on the suggestion of an attorney who is coaching him in a second application for SSA disability benefits and has advised him to obtain 'a regular therapist' in order to establish his claim of 'bipolar disorder' as the basis of a disability claim."[9]

Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a full range of light work.[10] At step four the ALJ determined that Mr. Almy was capable of performing his past relevant work as an electric motor repairer.[11] In the alternative at step five, the ALJ applied the Medical-Vocational Guidelines[12] and found that based on Mr. Almy's RFC he was capable of performing other jobs that exist in significant numbers in the national economy.[13] Therefore, in a decision dated August 9, 2011, the ALJ concluded that Mr. Almy was not disabled.

---

[7] *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (summarizing five step process).
[8] Tr. 20.
[9] Tr. 429, ALJ decision tr. 24.
[10] Tr. 21.
[11] Tr. 25.
[12] 20 C.F.R. pt. 404, subpt. P, app. 2.
[13] Tr. 25.

## STANDARD OF REVIEW

The Court reviews "the ALJ's decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record."[14] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15] It requires more than a scintilla, but less than a preponderance.

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all the evidence.[16] In reviewing the ALJ's decision the Court evaluates the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[17] The Court, however, may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[18] Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[19] Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[20]

## ANALYSIS

In this appeal, Mr. Almy contends: (1) the ALJ erred in rejecting the opinions of his treating and examining physicians; (2) the ALJ erred in failing to conduct a proper step four analysis; and (3) the ALJ erred in his alternative step five finding by failing to meet his burden to identify specific jobs consistent with Mr. Almy's functional limitations.

---

[14] *Madrid v. Barnhart*, 447 F.3d 788, 790 910th Cir. 2006).
[15] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).
[16] *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2000).
[17] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).
[18] *Lax*, 489 F.3d at 1084 (citation omitted).
[19] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).
[20] *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200).

### A. The ALJ's Rejection of the Opinions of Plaintiff's Treating and Examining Physicians

Mr. Almy contends the ALJ erred by improperly rejecting the opinions of his treating medical providers.[21] Specifically Plaintiff argues the ALJ improperly rejected the opinions of Dr. Beresford, Dr. Gant,[22] Dr. Lampert, and Dr. Aslami.

In the 10th Circuit, "[t]he ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence.'"[23] In rejecting a treating physician's opinion an ALJ must provide specific legitimate reasons for doing so.[24] Additionally, as with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[25] However, "[i]n choosing to reject [a] treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."[26]

Dr. Beresford opined that Mr. Almy "could work for a total of four hours a day lifting a maximum of 20 pounds and was limited to standing and sitting a total of two hours each."[27] Dr. Beresford also specifically noted that Mr. Almy's limitations "will need to be reassessed after

---

[21] Opening brief p. 11, docket no. 20.
[22] Plaintiff erroneously refers to Dr. Gant as Dr. Grant throughout his memoranda. *See* ALJ's decision tr. 24 (analyzing the opinion of Dr. Ralph Gant).
[23] *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)).
[24] *See Miler v. Chater*, 99 F.3d 972 (10th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).
[25] *See e.g., Ruthledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).
[26] *Langley v Barnhart*, 373 F.3d 119, 1121 (noting that the 10th Circuit "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's care is not a good reason to reject his opinion as a treating physician.") (quoting *McGoffin v. Barnhart*, 1248 F.3d 1252, 1253 (10th Cir. 2002)).
[27] Tr. 23.

THA."[28]  THA stands for Total Hip Arthroplasty or a total hip replacement.  The ALJ discounted Dr. Beresford's opinion for two reasons: (1) Mr. Almy had two surgeries, including a total hip replacement, after the date of Dr. Beresford's opinion and (2) Dr. Beresford was not experienced at translating a claimant's physical limitation into a RFC.

The Court finds the ALJ's decision to discount Dr. Beresford's opinion is supported by substantial evidence in the record.  Contrary to Plaintiff's argument, Dr. Beresford did not specifically limit a reevaluation of his assessment to back surgeries.  Rather, Dr. Beresford explicitly noted a reassessment was necessary following a hip replacement.  There is no reassessment in the record following Plaintiff's hip replacement and as noted by the ALJ, Mr. Almy reported that his back pain was stable in April 2011 following surgery.[29]  Because the ALJ properly discounted Dr. Beresford's opinion based on the hip replacement surgery the Court need not address the ALJ's second reason for discounting the opinion.

Dr. Gant opined that Plaintiff would be unable to engage in any type of work for at least one year.[30]  The ALJ gave little weight to Dr. Gant's opinion because it was based on the subjective complaints of Mr. Almy and evidence in the record undermined Mr. Almy's credibility.  The ALJ also noted that Dr. Gant's opinion was inconsistent with other medical evidence in the record and testimony.

In similar fashion to discounting Dr. Beresford's opinion, the Court finds the ALJ's decision to discount Dr. Gant's opinion is supported by the record.  The ALJ provided specific examples of inconsistencies in Mr. Almy's subjective complaints to different medical providers that undermine his credibility.[31]  Further, the ALJ noted the extremely elevated scores in Dr.

---

[28] Tr. 425.
[29] Tr. 23.
[30] Tr. 24.
[31] Tr. 24.

Gant's testing that provided a strong indication of an "over-elaboration of symptoms"[32] and led Dr. Gant to not be able to even interpret the test results. Such specific facts provide a legitimate reason for giving Dr. Gant's opinion little weight.[33]

Plaintiff next argues that the ALJ erred in rejecting the opinions of Dr. Lampert[34] and Dr. Aslami because he failed to include any of their mental health diagnoses at step three or in the RFC determination.[35] The Court disagrees. The ALJ specifically noted throughout his decision the reasons why he rejected Plaintiff's assertion of a mental health limitation. These included: (1) Plaintiff's own statement saying he was pursuing mental health treatment on the advice of an attorney so he could succeed in his second application for disability benefits;[36] (2) a lack of medical evidence documenting mental health treatment and complaints;[37] and (3) specific instances where Plaintiff reported that he was not receiving any mental health treatment and was doing well.[38] Finally, Plaintiff's complaints of Dr. Lambert Egli's diagnosis not being included are of little weight because Dr. Egli's diagnosis was provided two years before Plaintiff's alleged onset date of disability.[39] Moreover, a diagnosis alone does not establish a disability.[40]

In similar fashion to his arguments about rejecting the opinions of Dr. Lampert and Dr. Egli, Plaintiff also asserts the ALJ failed to include limitations contained in the opinions of Dr. Johnsen and Dr. Nestripke. Dr. Johnsen opined that, despite Plaintiff's "high degree of overmagnification," he had significant back disease which would limit his ability to bend

---

[32] Tr. 582.
[33] See Oldham v. Astrue, 509 F.3d 1254, 1257, 10th Cir. 2007) (finding the ALJ properly rejected opinions of treating and examining medical providers that depended on the claimant's subjective complaints because the claimant had a "propensity to exaggerate her symptoms and manipulate test results").
[34] There is no record of treatment in the record from Dr. Lampert. Instead, it appears that Plaintiff is referring to Dr. Lambert Egli.
[35] Opening brief p. 15.
[36] Tr. 24.
[37] Tr. 22-24.
[38] Tr. 24.
[39] See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the allged onset of disability are of limited relevance.").
[40] See e.g., Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988).

repetitively, lift heavy objects, and do strenuous activity.[41] Plaintiff argues these limitations were not included in the ALJ's RFC determination. The Court rejects this argument because the ALJ found Plaintiff could perform a full range of light exertional work.[42] The requirements for light exertional work include the exact limitations Dr. Johnsen placed on Plaintiff.[43] For example, light work does not require lifting heavy objects. Rather, it "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[44]

Plaintiff also argues the ALJ erred in giving Dr. Nestripke's opinion great weight while failing to include mental health limitations in the RFC. As noted above, the ALJ provided specific reasons for not finding any mental health limitations in the record as severe or limiting upon Plaintiff's basic mental activities.[45] Additionally, Dr. Nestripke opined that "with psychotherapy and med[ication] management [Plaintiff] could expect a significant recovery" and that his mental health status allowed him to be "able to complete part time work at least, if not full time" work.[46] If an individual's impairment can be controlled with treatment or medication, then that individual is considered not disabled.[47]

## B. The ALJ's Step Four Analysis

Plaintiff argues the ALJ failed to conduct a proper step four analysis because he did not make findings regarding the specific physical and mental demands of Plaintiff's past relevant work and because he did not rely on the vocational expert testimony to determine if he could

---

[41] Tr. 295.
[42] Tr. 21.
[43] "[T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person. . . . would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)." SSR 83-14, 1983 WL 31254, at *2.
[44] 20 C.F.R. 404.1567(b).
[45] Tr. 20.
[46] Tr. 289.
[47] *See* 20 C.F.R. § 404.1529(c)(3) (stating an ALJ must consider the effectiveness of treatment); *see also Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (evidence that impairment was well-controlled supported ALJ's conclusion that the claimant was not disabled).

perform his past relevant work.[48] Plaintiff also appears to take issue once again with the ALJ's failure to appropriately address his alleged mental health impairments. The Court is not persuaded by these arguments.

At step four of the sequential evaluation process, the ALJ must consider whether the claimant's "impairment or combination of impairments prevents him from performing his past work."[49] In his decision the ALJ explicitly stated that he compared "the claimant's residual functional capacity with the physical and mental demands of this [past relevant] work [and] finds that the claimant is able to perform it as actually and generally performed."[50] On appeal it is the general practice in the Tenth Circuit "to take a lower tribunal at its word when it declares that it has considered a matter."[51] In *Flaherty v. Astrue*,[52] the Tenth Circuit applied this principle in rejecting the plaintiff's argument that at step four, the ALJ failed to explicitly consider all her impairments, despite the ALJ stating he had done so.[53] The Court finds this case analogous and finds no reason to depart from the general practice. Further, the ALJ's discussion of the evidence and his reasons for his findings demonstrate that the ALJ took into account Mr. Almy's RFC in considering the demands of his past work.

The Court is also not persuaded that the ALJ erred by not taking into account Mr. Almy's alleged mental limitations at step four. The Dictionary of Occupational Titles classifies Plaintiff's past relevant work—electric motor repairer—as a light exertional occupation.[54] As noted previously, the Court finds the ALJ's RFC determination is supported by substantial

---

[48] Opening brief p. 16-17.
[49] *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (quotation omitted); *accord* 20 C.F.R. § 404.1560(b).
[50] Tr. 25.
[51] *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).
[52] 515 F.3d 1067, 1071 (10th Cir. 2007).
[53] *Id.*
[54] DICOT 721.684-022.

8

evidence in the record. Thus, there is no reason for the Court to remand this matter based upon the ALJ's step four determination.[55]

### C. **The ALJ's Step Five Finding**

Plaintiff asserts the ALJ should not have relied on the Medical Vocational Guidelines or Grids,[56] in his alternative step five analyses because Plaintiff's non-exertional limitations, i.e. the alleged mental limitations, should have been evaluated by a vocational expert.[57] The Court agrees with Defendant's position that this argument "simply rehashes Plaintiff's arguments about his residual functional capacity."[58] As found previously, the Court finds the ALJ's RFC determination is supported by substantial evidence in the record. Thus, the Court finds that the ALJ properly relied on the Grids as an alternative means to conclude that Plaintiff was not disabled.

## CONCLUSION

Based on the foregoing, the Court concludes the ALJ's decision is supported by substantial evidence in the record. Therefore, the Court AFFIRMS the decision of the Commissioner.

DATED this 21 February 2014.

*[signature: Brooke C. Wells]*

Brooke C. Wells
United States Magistrate Judge

---

[55] *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting certain technical errors are minor enough not to undermine confidence in the ALJ's determination).
[56] 20 C.F.R. pt. 404, subpt. P, app. 2.
[57] Opening brief p. 18.
[58] Op p. 24.

9